WATSON, Judge.
Plaintiff, Elverna Johnson was injured while riding as a guest passenger in an automobile which was struck from the rear by an automobile insured by defendant, State Farm Mutual Automobile Insurance Company. A third car, insured by defendant, Beacon National Insurance Company, then struck the second car. It is alleged that the third car caused a second impact with the Johnson car which contributed to plaintiff’s injuries. The trial court gave plaintiff Johnson a judgment against State Farm for $7,500 in general damages and $1,266.91 in special damages but dismissed the suit against Beacon. Both plaintiff Johnson and State Farm have appealed.

ISSUES

The issues on appeal are: (1) whether the trial court was clearly wrong in dismissing the suit against Beacon; and (2) whether the amount awarded to plaintiff is so excessive or inadequate as to constitute an abuse of the trial court’s discretion.

FACTS RELATING TO LIABILITY OF BEACON

The accident occurred on October 2, 1977, on U.S. Highway 71, about one-tenth of a mile north of the Clarence intersection, in Natchitoches Parish. Elverna Johnson was being driven by a daughter, Lucille Johnson Foster, in a car owned by another daughter, Adrena Reed. The Johnson vehicle was stopped to make a left turn when it was hit by the second automobile operated by Judy Fleming. Elverna Johnson, Lucille Foster and Judy Fleming all testified that there was a second impact between the Johnson and Fleming cars when the latter was struck from the rear by the third car. This third automobile was owned and operated by Beacon’s insured, Jessie Willard Alford, who was not named as a party to the suit and did not testify. The declarations’ sheet of the Beacon policy (BN-1) identifies Alford as a resident of Kermit, Texas, employed by Leatherwood Drilling Company.
The investigating officer, Louisiana State Police Trooper H. P. Salard, found the Johnson vehicle approximately 60 feet and the Fleming vehicle approximately 10 feet from the point of impact when he arrived on the scene. Trooper Salard said that Alford apparently ran into the rear of Fleming, but he did not know whether Fleming hit the Johnson vehicle a second time as a result. He assumed from the locations of the Johnson and Fleming automobiles that there was no second impact between these cars. Salard called an ambulance for plaintiff Johnson.
Elverna Johnson was taken to the emergency room of the Natchitoches Parish Hospital. The emergency room history (P-10) states that the car she was occupying was hit from the rear “. . - by two different impacts . . .” This was also the history given to Dr. Joseph A. Thomas and Dr. Robert Schwendimann, Elverna Johnson’s two treating physicians.
The trial court apparently attached no particular significance to Alford’s failure to testify. Alford was not subpoenaed by any party. Counsel for Beacon did not comment at trial on its failure to call its insured as a witness. It is contended in brief that he resides outside the subpoena power of the court and might have declined to appear.

CONCLUSION: LIABILITY

Since three of the four eyewitnesses to the accident testified to a second impact and this direct testimony was unrebutted by any testimony from the fourth, the fact of a second impact must be accepted as *1197 proven. Although Alford was not a party to a lawsuit and not subpoenaed to appear, his insurer was entitled to his cooperation had his testimony been desired. The only reasonable inference is that Alford’s testimony would have been adverse to Beacon. See Teissier v. Stewart, 11 La.App. 167, 123 So. 174 (La.App.Orl.1929) and Gulf States Utilities Company v. Guidry, 183 So.2d 122 (La.App. 1 Cir. 1966).
The trial court erred in concluding that there was no second impact between the Fleming and Johnson automobiles solely on the basis of the testimony of Trooper Salard (TR. 80), who was not an eyewitness to the accident and based his report primarily on statements made to him at the scene. (TR. 18). Salard’s hearsay version of the sequence of events is completely uncorroborated and is contradicted by the testimony of three eyewitnesses. See Gulf States Utilities Company, supra. The trial court was clearly wrong in dismissing plaintiff’s suit against Beacon. Arceaneaux v. Domingue, 365 So.2d 1330 (La., 1978).

FACTS RELATING TO QUANTUM

Dr. Joseph A. Thomas, stipulated to be an expert in general medicine and surgery, saw plaintiff Johnson, age 55, the day following the accident, when she appeared to be in obvious pain. In essence, Dr. Thomas found muscle spasms on both sides of plaintiff’s body from the neck down the entire length of the spine. She had spasms of the spinae erector muscles, tenderness to palpation over both occipital nerves at the base of the skull, severe spasms of the trapezius and latissimus dorsi muscles bilaterally, and an extreme degree of spasm in the paraspinous and iliolumbar muscles in the lumbar region of the back. Plaintiff Johnson exhibited a marked decrease in range of motion and sciatic nerve tenderness.
Dr. Thomas attributes plaintiff’s present headaches to occipital nerve pressure rather than a postconcussion syndrome. In Dr. Thomas’ opinion, plaintiff Johnson has nerve root irritation. She was in pain on her last weekly visit to Dr. Thomas shortly before trial. Dr. Thomas estimated her permanent disability at 40% of the body as a whole. Dr. Thomas had seen Ms. Johnson prior to the accident. She had preexisting osteoarthritis, but Dr. Thomas felt that the trauma activated her arthritic condition. However, in his opinion, she was unable to do manual labor before the accident, (TR. 66) as well as afterward.
Dr. Thomas referred plaintiff to Dr. Robert Newton Schwendimann, a neurologist, about 5 months after the accident. Dr. Schwendimann saw her three times and found no objective symptoms of injury. His diagnosis was a cervical muscle strain and postconcussion syndrome. Dr. Schwen-dimann’s only recommendation was for conservative therapeutic treatment. He testified in deposition that her prognosis for recovery was good.
The reports of Dr. Robert R. Sills,[1] whose clinic had treated plaintiff at least 11 years prior to the accident, indicate that plaintiff was unemployable before the accident because of arthritis in the knees, overweight, anxiety, high blood pressure and some heart irregularity. When Dr. Sills saw her following the accident, she was also complaining of arthritis in her back. At that time, in addition to the arthritis in her back and knees, she had hypertension, emotional instability, obesity, and a gall bladder problem. Only the arthritis in her back can be related in any way to the accident. Dr. Sills’ reports indicate that Ms. Johnson has never worked much because of physical problems and emotional instability. She has been dependent on welfare for many years.
Plaintiff’s special damages include $332 for dental work based on the testimony of Dr. J. T. Melancon that he could replace two broken crowns for that amount. Although Dr. Melancon did not see Ms. Johnson until May of 1978, he said that the *1198 accident was a “more than likely” (TR. 27) cause of the dental injury.
Plaintiff Johnson testified that she had done odd jobs prior to the accident, working as a cook one day a week at $35 a day, painting and mowing yards. Plaintiff’s daughter, Lucille Foster, testified that her mother was not handicapped before the accident, could do part-time work, housework and yardwork, but had been incapacitated as a result of the accident. She said her mother had also had a personality change and had become “mean.”

CONCLUSION: QUANTUM '

According to Dr. Thomas and Dr. Sills, plaintiff Johnson was unemployable before the accident as well as afterward. A loss of earnings of $35 per week was uncorroborated. Dr. Thomas’ estimate of a 40% disability included plaintiff’s preexisting problems. Although, in answer to a hypothetical question, Dr. Thomas attributed 75% to 80% of this disability to the accident, the hypothet assumed, incorrectly, that plaintiff was functioning well prior to the accident. The reports of Dr. Sills and testimony of Dr. Thomas indicate she was disabled before the accident.
Although there is some doubt about the caused connection between Ms. Johnson’s dental problems and the accident, an award for this item of damages is supported by Dr. Melancon’s testimony. The award of general damages is within the trial court’s “much discretion.” LSA-C.C. art. 1934.
For the foregoing reasons, the judgment of the trial court herein is reversed insofar as it dismissed plaintiff’s suit against Beacon National Insurance Company and affirmed as to the award of damages.
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Elverna Johnson, and against the defendants, State Farm Mutual Automobile Insurance Company and Beacon National Insurance Company, in solido, in the amount of $8,766.91, together with legal interest thereon from the date of judicial demand until paid and all costs, including the expert witness fees fixed by the trial court.
All costs of appeal are taxed against ap-pellee, Beacon National Insurance Company.
AFFIRMED IN PART, REVERSED IN PART and RENDERED.

. This physician did not appear in person; his reports were received in evidence in lieu of his testimony without objection.